E-FILED
Tuesday, 21 November, 2006  03:37:36 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| THOMAS MUNOZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  05-3260 |
| | ) | |
| DETECTIVE JIM GRAHAM, | ) | |
| DETECTIVE PAUL CARPENTER, | ) | |
| and DETECTIVE RICK DHABALT, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on Defendants' Motion for Summary Judgment (d/e 26).  Pro se Plaintiff Thomas Munoz alleges that Defendants violated his Constitutional rights in their role as Detectives of the Springfield Police Department (SPD).  Munoz asserts that Defendants violated his Constitutional rights when they arrested him based on an incident that occurred outside of the City of Springfield.  Munoz alleges claims against Defendants individually and in their official capacities.  Defendants assert that they are entitled to summary judgment on all of Munoz's claims.  For the reasons set forth below, the Motion for Summary

Judgment is allowed.

BACKGROUND

On December 20, 2004 at approximately 9:00 a.m., Officer Kent Bragg of the Rochester, Illinois Police Department was called to the St. Jude Catholic Church in Rochester to speak with Father Bill Carpenter. The following information is taken from Bragg's police report. Amended Complaint (d/e 15), Ex. B. Rochester Detail Incident Report (Rochester Police Report). Father Carpenter reported that, on December 18, 2004, at approximately 5:30 p.m., a member of the church saw a "suspicious man near the reception hall and also Father Carpenter's residence which are located next to each other." Id., p. 2. The church member, Ray Roth, saw the man attempt to open the front door to the reception hall. He was unable to do so, however, because the door was locked. The man then attempted to open the front door of Father Carpenter's residence. When he could not open the front door, the man "walked to the side of the residence and attempted to make entry through a side door." Id.

At this point, Roth exited the vehicle in which he had been sitting, and approached the man to see if he could assist him. When Roth did so, he recognized the man from prior church functions as Thomas Munoz. Munoz

2

told Roth that he was looking for Father Carpenter to give him a Christmas decoration.  Munoz retrieved the decoration from his car and gave it to Roth.  After doing so, Munoz left the area in a dark colored mid-size car.

Father Carpenter told Bragg that he wanted to report the incident "due to the suspicious nature of Munoz."  Rochester Police Report, p. 2. The priest reported that Roth, an employee of the Illinois Department of Corrections, "felt that Munoz's mannerisms were suspicious and consistent with someone who was not being truthful."  Id.  Officer Bragg contacted Roth, who confirmed what Father Carpenter had told the officer.  Roth added that "while at the front door of Father Carpenter's residence, at some point Munoz reached into his front pant pocket however [Roth] stated that he was unable to see what or if anything was in Munoz's hand."  Id.  Roth further stated that Munoz was on parole status with the Illinois Department of Corrections and has several past arrests associated with thefts from schools and places of worship.  Bragg's report concludes by stating "the investigation regarding Thomas Munoz continues."  Id.

On December 21, 2004, Monsignor Eugene Costa was found badly beaten in a park in Springfield, Illinois.  Defendants were assigned to investigate the case.  Motion in Opposition to Defendants' Motion for

Summary Judgment (d/e 28) (Plaintiff's Opposition). Ex. J-(a), p. 1.[1]  As a

part of the investigation, on December 27, 2004, Defendants Dhabalt and

Carpenter visited the offices of the Springfield Catholic Diocese.   The

following information comes from Dhabalt's report of the investigation.

Plaintiff's Opposition, Ex. E.  When asked to identify possible suspects in

the Costa beating, Monsignor John Renken told the Detectives that Munoz

had "been causing some trouble for the church."  Id., p. 1.  He stated that

Munoz was a suspect in a two unsolved thefts from the Cathedral of the

Immaculate Conception, one of which occurred in late December 2004 and

one of which occurred in August 2004.  Near the time of each of the thefts,

Munoz had been working at the Cathedral as a caterer.  Renken added that

Munoz had a record of breaking into churches and stated that he believed

that Munoz had recently tried to break into St. Jude's Church in Rochester.

Defendants Dhabalt and Carpenter returned to the police station and

began to check computer records for information relating to Munoz and the

church thefts.  Dhabalt contacted the catering service, which confirmed that

---

[1]Plaintiff presented the Court with numerous exhibits to his Opposition and his
Affidavitt [sic] in Opposition to Defendants Motion for Summary Judgement [sic] (d/e
30), including police reports, SPD internal affairs documents, and newspaper articles.
Defendants did not move to strike any of these documents; thus, the Court will consider
them in ruling on the pending Motion.

Munoz had been working on August 14 and December 26, 2004. Dhabalt's report states as follows, "While continuing to work other leads we also decided to look into the incident in Rochester." <u>Plaintiff's Opposition</u>, Ex. E, p. 1.

Dhabalt contacted St. Jude's rectory and was informed that Father Carpenter would be out of town for a week. Dhabalt next contacted Roth, who told Dhabalt that he was in the diocesan deaconate program and as a result he was familiar with several individuals who were around the church on a regular basis. One of these individuals was Thomas Munoz. Roth met Munoz while performing deacon duties at Sacred Heart Church in Springfield. One day after Mass, Munoz approached Roth and expressed an interest in becoming a liaison to the Hispanic community. Roth informed Munoz of certain requirements for serving with the church, including a background check. At that time, Roth noticed tattoos on Munoz's neck that Roth recognized to mean that Munoz had been in prison. The men discussed this. Roth stated that after the discussion about Munoz's background, "Munoz stopped hanging around." <u>Id</u>., p. 2.

Roth then told Dhabalt about the December 18, 2004, incident at St. Jude's. Roth stated that he was sitting in his truck waiting for his wife to

get out of Saturday evening Mass.  He saw a small, dark car pull into the parking lot near the rectory.  Roth thought this was unusual because it was too late to go to Mass and the car parked far from the front doors of the church.  Roth observed a man get out of the car with something in his hand. The man walked up to the church office/rectory and tried to pull the door open a couple times.  When the door did not open, the man walked over to Father Carpenter's house and pulled on the front door a couple of times. When that door did not open, the man walked around the side of the garage to a side door on the house and tried to open it.

When Roth saw the man heading toward the side door, he exited his truck and approached him.  When Roth did so, he recognized the man as Munoz.  Roth called Munoz by name and asked him what he was doing. Roth identified himself as Deacon Ray from Sacred Heart Church.  Munoz said that he was there to deliver a Christmas present to Father Carpenter. Roth stated that it was obvious that Mass was going on and that the rectory and Father Carpenter's house were dark.  Roth told Munoz to get his present and Roth would deliver it.  Munoz went back to his car and retrieved a potted poinsettia that appeared to Roth to be old.  The dirt was dried out and some leaves were missing.  Munoz gave Roth the plant and

left.  Roth believed that Munoz's story was contrived and that "Munoz might have had other intentions."  Id., p. 2.

Roth stated that Father Carpenter decided to make a police report several days later, after Roth told him about the incident, and the men found scratches on the door locks of the doors to the office where Roth had seen Munoz with something in his hand.  Roth said that, thinking back, it may have been a screwdriver or a pry tool in Munoz's hand, but he could not say for sure.  Roth also advised Dhabalt of another incident at the church where someone he believed to be Munoz walked into a women's church meeting in the middle of the day.  The man appeared startled that there were people in the church and quickly retreated without explaining why he was there.  This concluded Dhabalt's conversation with Roth.

Dhabalt's report states that the next day all three Defendants went to Divernon, Illinois, and staked out Munoz's house.  When Munoz arrived home, the Detectives confronted him in his garage, identified themselves as SPD officers, and began to question Munoz about his comings and goings at St. Jude's.  Dhabalt described Munoz as "very forth coming with information."  Id., p. 3.  Munoz invited the Defendants into his home and continued to speak with them until his roommate arrived.  Dhabalt stated

that Munoz was "not nearly as willing to talk" to the Detectives after the roommate arrived, so the Detectives left.  Id.

Dhabalt reported that the day after the Defendants met with Munoz, they reviewed the information with a sergeant.  The men "decided that Munoz was not being truthful about his involvement at St. Jude's or at the Cathedral."  Id.  Therefore, they "decided that [they] could get a warrant for Attempt Burglary at St. Jude's based on what Ray Roth had told [Dhabalt]."  Id.  Dhabalt's report concludes as follows:

> Det. Graham advised he would talk to [Assistant State's Attorney] Steve Weinhoeft and relay the information to him. Later that morning a warrant was issued and Det. Carpenter went to Divernon and arrested Thomas Munoz. . . . It was our belief that once in custody, Munoz would be more inclined to be truthful about his dealings around the various churches. We also believed that we would be in a better position to confront him about Msgr. Costa once he was transported to our offices. Munoz was transported to the Springfield Police Station and escorted to the Robbery/Homicide Offices of the Investigations Section on the second floor.  Munoz was advised that his interview was going to be recorded and he agreed.  (See transcript for content of the interview.)

Id.[2]

Assistant State's Attorney Weinhoeft was deposed in connection with

---

[2]The Court notes that neither side has provided it with a copy of the interview transcript.

the instant lawsuit.  <u>Motion for Summary Judgment</u>, Ex. 8, <u>Deposition of Steve Weinhoeft (Weinhoeft Dep.)</u>.  He testified that procedures varied widely, depending on the facts of the particular case, as to when law enforcement officers contacted the State's Attorney's Office to request an arrest warrant.  <u>Id</u>., p. 10.[3]  Weinhoeft noted that it was the responsibility of the State's Attorney's Office to initiate charges through a criminal complaint and to request a warrant from the Court.  <u>Id</u>., p. 10-11.  Weinhoeft explained that an officer seeking a warrant would present information to one of the assistant state's attorneys.  <u>Id</u>., p. 11.  If the assistant is satisfied that probable cause exists, he or she would authorize a warrant.  <u>Id</u>.  A complaint is then prepared by the State's Attorney's Office and taken before a judge.  The officer is placed under oath before the judge, offers a brief explanation of the facts supporting probable cause, and swears that the information contained in the complaint is true.  <u>Id</u>., p. 11-12.  The judge may question the officer under oath.  The judge ultimately determines whether to approve or disapprove the warrant.  <u>Id</u>., p. 12.

Weinhoeft testified that he was the assistant state's attorney who

_____

[3]Defendants provided only excerpts of Weinhoeft's Deposition.  The Court will cite to the page numbers that are on each page, although they are not consecutive.

authorized the warrant request in Munoz's case, after he spoke with Defendant Graham.  Id., p. 11.  He testified that it was reasonable for an officer to rely on another officer's written report.  Id., p. 16.  He noted that the Defendants did not rely solely on the Rochester Report, but rather "reached out to . . . the individuals involved."  Id., p. 16-17.  Weinhoeft stated that there are two primary issues when considering an arrest decision; first, did the crime occur and secondly, is this the person who committed the crime.  Id., p. 17.  Weinhoeft noted that, in the Munoz case, the Defendants "firmed up the identification quite well."  Id.  He further testified that Defendant Dhabalt "also followed up with just substantively and obtained considerably more details about what happened than just what's contained in the Rochester reports."  Id., p. 18.  Weinhoeft testified that based on the information that was presented to him by the Detectives, he was absolutely convinced that there was sufficient probable cause to request an arrest warrant.  Id.

Weinhoeft further testified that he was aware, at the time that Detective Graham came to him to request a warrant, "that this was kind of an investigative tool that while we believed this offense occurred, not only were we looking at it in its own right, because it was going to be prosecuted

10

in its own right, but we were also looking at Mr. Munoz for the Father Costa case." Id., p. 41.  Weinhoeft stated that he saw nothing wrong with the fact that the Detectives wanted to bring Munoz in to question him in the Costa case, using the St. Jude case from Rochester as legal justification. Id., p. 40-41.

After Graham met with Weinhoeft, a criminal complaint and warrant were drawn up and presented to a judge, who authorized an arrest warrant. Amended Complaint, Ex. A.  In the criminal complaint, Defendant Graham swore, under oath, that Munoz had committed the offense of Attempt Burglary  in that Munoz, with the intent to commit burglary of a place of worship, knowingly, without authority, attempted to enter the rectory of St. Jude Catholic Church, with the intent to commit a felony or theft therein. Id.  Munoz was arrested on December 30, 2004, based on the warrant.  At the time of the arrest, Munoz was on parole from the Illinois Department of Corrections.  As a result of the arrest, the Department of Corrections filed a Parole Violation Report, recommending that Munoz be returned to a Department of Corrections facility and presented to the Parole Board as a violator.  Plaintiff's Opposition, Ex. I(a), Parole Violation Report.  Munoz alleges that the Sangamon County State's Attorney's Office dismissed the

11

Attempt Burglary case for lack of evidence on March 18, 2005.  Munoz was subsequently released from custody.

In October 2005, Munoz filed the instant lawsuit.  With leave of Court, Munoz filed an Amended Complaint on January 31, 2006.  The Amended Complaint alleges that the Defendants violated Munoz's Constitutional rights by conspiring to knowingly give false information to the Sangamon County State's Attorney's Office in order to secure a warrant for his arrest and by conspiring to abuse their police authority to arrest and intimidate Munoz into confessing to criminal acts which he did not commit.

<u>ANALYSIS</u>

Defendants assert that they are entitled to summary judgment on all of Munoz's claims.  Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Fed. R. Civ. P.</u> 56(c).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the moving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The moving party has the initial burden of demonstrating the absence of a

genuine issue of material fact and that judgment as a matter of law is appropriate. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). When a properly supported motion for summary judgment has been made, the party opposing summary judgment may not merely rest on the pleadings but must "set forth specific facts showing that there is a genuine issue for trial." <u>Fed. R. Civ. P.</u> 56(e). "A party must present more than mere speculation or conjecture to defeat a summary judgment motion." <u>Liu v. T & H Machine, Inc.,</u> 191 F.3d 790, 796 (7th Cir. 1999). The Court must consider the evidence in the light most favorable to the non-moving party, here Munoz, and draw all reasonable inferences in his favor. <u>See Anderson</u>, 477 U.S. at 255.

Munoz's Amended Complaint states that he is bringing suit against city officials for Constitutional violations. Therefore, 42 U.S.C. § 1983 provides a vehicle for Munoz's claims. To succeed, Munoz must show: (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person or persons acting under color of state law. 42 U.S.C. § 1983.

The Court turns first to Munoz's claim that Defendants conspired to knowingly give false information in order to secure a warrant for his arrest.

13

Munoz can show a Constitutional violation by establishing that the Defendants knowingly or intentionally or with a reckless disregard for the truth, made false statements to the judge who issued that warrant, and that the false statements were necessary to the judge's determination that probable cause existed for Munoz's arrest.  See Franks v. Delaware, 438 U.S. 154, 155-56 (1978).  Each Defendant has presented an Affidavit stating that he did not knowingly give false information to the Sangamon County State's Attorney's Office in connection with the Munoz warrant. Motion for Summary Judgment, Exs. 4A, 5A, & 6A.  Moreover, Munoz concedes that the Detectives were acting on information that they believed to be true and that they had no reason to know was false.  When he was deposed in connection with the instant lawsuit, Munoz testified that there was never an attempted burglary of the Rochester church; rather he asserts that the people from the church knowingly gave the Detectives false information. Motion for Summary Judgment, Ex. 7, Deposition of Thomas Munoz (Munoz Dep.), p. 112-13.[4]  Munoz concedes that, at the point Defendant Graham went to talk to the State's Attorney's Office, Graham

---

[4]Defendants provided only excerpts of Munoz's Deposition.  The Court will cite to the page numbers that are on each page, although they are not consecutive.

14

stated that the Detectives had "this guy who was present at the church, we know he's got a history--some sort of history of breaking into churches, and we got scratch marks on the door or whatever . . . ." Id., p. 115.  Munoz concedes that none of this information was false.  Id.  When asked "So the fact is the officers were acting on information that they believed to be, correct?," Munoz replied, "Yes." Id., p. 113.

In his Affidavit in Opposition to Defendants' Motion for Summary Judgment, Munoz identifies three instances in which he believes Defendants provided false information.  First, Munoz avers that Defendants misled the Rochester Police Chief by failing to advise him that they were going to attempt to obtain an arrest warrant based on the St. Jude incident.  Even if true, this allegation is immaterial to the probable cause determination.  Munoz further states that "Defendant Dhabalt lied when he stated the additional information he recieved [sic] from Deacon Ray Roth was that thier [sic] were pry and scratch marks on doors, Rochester Police Chief Bill Marass states those pry marks came from a previous attempt Burglary that had no relation to plaintiff." Affidavit in Opposition to Defendants Motion for Summary Judgment, p. 2.  As an initial matter, the Court notes that the exhibits provided by Munoz in support of his Affidavit indicate that there

had been a prior attempted burglary at St. Jude's that did not involve Munoz.  However, these exhibits do not expressly link the pry marks to the previous attempted burglary.  Moreover, there is no admissible evidence in the record to support a finding that the Detectives had been informed in any way, at the time they sought the arrest warrant, that the pry marks were related to a prior burglary.

Finally, Munoz avers that Defendants lied when they told Weinhoeft that additional documents were coming from Chicago to establish modus operandi.  Munoz concedes that he has a history of breaking into churches; therefore, the argument on this point is limited to the modus operandi issue and not the fact of the prior convictions.  <u>Munoz Dep.</u>, p. 111.  There is no evidence that Defendants made any statement regarding modus operandi to the judge who issued the arrest warrant, or that such a statement, if made, was necessary to that judge's probable cause determination.  Nor is there any evidence that any such statement was false at the time it was made.  Munoz only asserts that the additional reports from Chicago failed to materialize during the seventy days that he was incarcerated.  Therefore, Munoz fails to identify any evidence from which a reasonable jury could conclude that Defendants knowingly or intentionally made false statements

in their quest to obtain a warrant for Munoz's arrest.

The argument that Defendants acted with reckless disregard for the truth is similarly unavailing.  The Defendants were acting on information obtained from a third-party eyewitness who was studying to be a church deacon and was employed with the Department of Corrections.  Defendants did not rely solely on the information contained in the Rochester Police Report; rather, Defendant Dhabalt personally interviewed the witness as well.  Furthermore, Munoz conceded in his deposition that the Detectives were acting on information that they had no way of knowing was false. Munoz Dep., p. 113.  With respect to the Chicago reports which would purportedly have established modus operandi, there is no evidence to support a finding that the officers acted with reckless disregard in stating that such reports would be forthcoming.  Munoz fails to identify any facts that could support a finding that the Detectives acted recklessly in believing the information provided to them.

Because Munoz is proceeding pro se, the Court will liberally construe his submissions.  Arguably he contends that Defendants violated his Constitutional rights in applying for a warrant in the first place, with information that they should have known failed to establish probable cause.

17

See Beauchamp v. City of Noblesville, Ind., 320 F.3d 733, 742 (7th Cir. 2003) (citing Malley v. Briggs, 475 U.S. 335, 345 (1986)).  "Probable cause exists if law enforcement agents . . . reasonably believe, in light of the facts and circumstances within their knowledge at the time of the arrest, that the suspect had committed or was committing an offense."  United States v. Carrillo, 269 F.3d 761, 766 (7th Cir. 2001) (internal quotations and citation omitted).  The determination of probable cause "is necessarily based on probabilities and does not require evidence sufficient to support a conviction."  Id. (internal quotations and citations omitted).  Probable cause exists if, at the moment when Defendants sought the warrant for Munoz's arrest, the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that Munoz had committed the crime alleged in the criminal complaint.  See Beauchamp, 320 F.3d at 743.

Under Illinois law, burglary is defined as follows: "A person commits burglary when without authority he knowingly enters or without authority remains within a building, . . . or any part thereof, with intent to commit therein a felony or theft."  720 ILCS 5/19-1(a).  The statute expressly provides that "[a] burglary committed in a school or place of worship is a

Class 1 felony." 720 ILCS 5/19-1(b). Under Illinois law, "[a] person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." 720 ILCS 5/8-4.

Munoz fails to identify facts sufficient to support a finding that reasonably well-trained officers in the Defendants' position should have known that the information they provided in support of the warrant application was insufficient to establish probable cause. Munoz relies on Rochester Police Chief Marass' opinion that the information in the Rochester Police Report was insufficient to justify an arrest. However, the record reveals that, in addition to the Rochester Police Report, Defendant Dhabalt interviewed Roth about the incident at St. Jude's. Roth explained that he had observed Munoz get out of the car with something in his hand. Munoz walked up to the church office and tried to pull the door open several times. When the door did not open, Munoz walked over to Father Carpenter's house and pulled on the front door a couple of times. When that door did not open, Munoz walked around the side of the garage to a side door on the house and tried to open it. Roth further indicated that he and Father Carpenter had discovered scratches on the door locks of the

19

doors to the office where Roth had seen Munoz with something in his hand. Roth told Dhabalt that, thinking back on the incident, the item he saw in Munoz's hand may have been a screwdriver or a pry tool. "The complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate." Beauchamp, 320 F.3d at 743. Defendants also knew that Munoz had prior arrests for breaking into churches and was suspected in other church burglaries. This information, viewed collectively, is sufficient to warrant a prudent person in believing that Munoz had committed attempt burglary at the St. Jude Church.

The Court notes that any ulterior motives that Defendants harbored in seeking Munoz's arrest are irrelevant. The Supreme Court has recognized that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren v. United States, 517 U.S. 806, 813 (1996). Additionally, the information was presented to a judge who concluded there was probable cause and then issued the warrant. Defendants are entitled to summary judgment on Munoz's claims relating to the arrest warrant.

The Court need not linger over Munoz's claim that Defendants

violated his Constitutional rights by conspiring to abuse their police authority to intimidate him into confessing to criminal acts which he did not commit. Munoz fails to identify any actions by the Defendants that could support a finding of intimidation. Conclusory statements are not sufficient to satisfy the requirements of Federal Rule Civil Procedure 56(e). <u>Stagman v. Ryan</u>, 176 F.3d 986, 995 (7th Cir. 1999). Defendants are entitled to summary judgment on this claim as well.

THEREFORE, Defendants' Motion for Summary Judgment (d/e 26) is ALLOWED. Defendants are entitled to summary judgment on all of Plaintiff's claims. All pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER: November 21, 2006.

FOR THE COURT:

_____ s/ Jeanne E. Scott _____
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE